UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE SCOTT, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 4:22-0006 |
| v. | : | (JUDGE MANNION) |
| UNITED STATES OF AMERICA, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### MEMORANDUM

Presently before the court are two reports from Judge Arbuckle that make recommendations with regard to Defendants' motions to dismiss Plaintiff's complaint. (Docs. 42 & 45). Judge Arbuckle recommends the court grant the United States' motion to dismiss (Doc. 9) in part and grant the prison officials' motion to dismiss (Doc. 10) in full. The United States objects to the recommendation that the court deny its motion to dismiss Plaintiff's FTCA claims regarding the BOP's use of chemical munitions and failure to intervene. (Doc. 49). Plaintiff objects to the recommendation that the court dismiss his *Bivens* claims. (Doc. 50). Upon review of the record, the court will **SUSTAIN** Plaintiff's objection in part and **OVERRULE** the United States' objection. Thus, the court will **ADOPT IN PART** the first report (Doc. 42) and **ADOPT IN ITS ENTIRETY** the second report (Doc. 45) as follows.

I. **STANDARD OF REVIEW**[1]

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D. Pa. 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See* Fed. R. Civ. P. 72(b), advisory committee notes; *Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D. Pa. 2010) (citation omitted). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

---

[1] Judge Arbuckle stated the relevant factual and procedural backgrounds of this case in his reports. (*See* Doc. 42 at 13–19; Doc. 45 at 7–12).

II.   **DISCUSSION**

Judge Arbuckle accurately stated the legal standards relevant to the defendants' motions to dismiss in his reports. (*See* Doc. 42 at 2–13; Doc. 45 at 2–7). With those standards as a backdrop, this court will address the two objections raised by the parties: (a) that Judge Arbuckle erred in finding Plaintiff's *Bivens* claims should be dismissed and (b) that Judge Arbuckle erred in allowing part of Plaintiff's FTCA claim to proceed.

   A.   **New *Bivens* context**

As Plaintiff puts it in his objection to Judge Arbuckle's report, "the sole issue is whether Mr. Scott's dual Eighth Amendment, failure to intervene/protect claims present a new *Bivens* context in light of his medical and housing situations." (Doc. 50 at 7). Plaintiff's objection stems from the well-established principle in this area of law that judicial expansion of the *Bivens* remedy is disfavored. Rather, courts must limit such remedy to the specific contexts in which *Bivens* and its progeny were decided. The threshold question then is whether Plaintiff's claims present a new context in which the *Bivens* remedy has not been recognized. If so, they should be dismissed unless certain factors warrant judicial expansion. "A context may be regarded as new if it is different in any 'meaningful way' from the three contexts where the Court has recognized a *Bivens* remedy . . . and even 'a

modest extension is still an extension.'" *Xi v. Haugen*, 68 F.4th 824, 834 (3d Cir. 2023) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 147 (2017)).

Plaintiff first argues his failure to protect claim falls into the same *Bivens* context as *Farmer v. Brennan*, 511 U.S. 825 (1997), and *Shorter v. United States*, 12 F.4th 366 (3d Cir. 2021), which relied on *Farmer*. In *Farmer*, the Supreme Court recognized a *Bivens* remedy for a transgender prisoner who alleged prison officials were deliberately indifferent to the risk that she would be assaulted by other inmates. *Id.* at 829–34. The plaintiff inmate in *Farmer* had been placed in segregation for safety concerns and then transferred to a more dangerous prison and housed in general population where she was later beaten and raped in her cell. *Id.* at 830–31. In *Shorter*, the Third Circuit held that a transgender inmate's claim that prison officials failed to protect her from being sexually assaulted by other inmates did not present a new *Bivens* context in light of *Farmer*. *Shorter*, 12 F.4th at 373. "*Farmer* made clear, in circumstances virtually indistinguishable from our case, that an Eighth Amendment *Bivens* remedy is available to a transgender prisoner who has been assaulted by a fellow inmate." *Id.*

The court notes at the outset that the Supreme Court has not included *Farmer* in its list of the three contexts in which the Court has recognized a *Bivens* remedy. In *Abassi* (2017), the Court named three previous cases in

which a *Bivens* remedy has been recognized: *Bivens* itself (Fourth Amendment unreasonable search and seizure), in addition to the *Davis v. Passman*, 442 U.S. 228, 249 (1979) (Fifth Amendment gender discrimination in employment), and *Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980) (Eighth Amendment deliberate indifference to a prisoner's serious medical needs). *Abassi*, 582 U.S. at 131 ("These three cases—*Bivens*, *Davis,* and *Carlson*— represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."). The court did not include *Farmer* in its *Bivens* trilogy. Nonetheless, the Third Circuit held in *Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018), that *Farmer* was still a *Bivens* case, reasoning the Supreme Court neglected to name *Farmer* in *Abassi* because it saw that case as falling under the umbrella of *Carlson*.

Then in *Hernandez v. Mesa*, 140 S. Ct. 735, 741–43 (2020), the Supreme Court again referenced only *Bivens*, *Davis*, and *Carlson* as the cases in which a *Bivens* remedy has been recognized. But, again, in *Shorter v. United States*, 12 F.4th 366, 373 n.5 (3d Cir. 2021), the Third Circuit subsequently held that *Farmer's* absence from *Hernandez* was due to the Court seeing that case as falling under the *Carlson* umbrella.

Then in *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022), the Supreme Court again listed only *Bivens*, *Davis*, and *Carlson* as the three cases in

which the Court has "fashioned new [*Bivens*] causes of action under the Constitution." No mention of *Farmer*. In its most recent *Bivens* case, the Third Circuit grew similarly silent on *Farmer*. *See Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023).[2] In *Xi*, the Third Circuit explained, "In the fifty-two years since *Bivens* was decided, however, the Supreme Court has pulled back the reins to what appears to be a full stop and no farther" from the trilogy of *Bivens*, *Davis*, and *Carlson*. *Id.* But, somewhat cryptically, the court in *Xi* included *Bistrian* (applying a *Bivens* remedy to a Fifth Amendment failure-to-protect claim) in a footnote string citation of cases exemplifying the Third Circuit's purported "refus[al] to extend *Bivens* except in one of these three established contexts." *Id.* at 832–33 n.7.

Thus, it appears that, in the Third Circuit's view, *Bivens* claims include a failure to protect claim arising under *Farmer*, even though *Farmer* has been conspicuously absent from the Supreme Court's *Bivens* jurisprudence. It is not clear how many Supreme Court *Bivens* cases that exclude *Farmer* it will take before the Third Circuit interprets the exclusion as intentional.

In any event, it seems Judge Arbuckle took the correct approach in still considering *Farmer*. *Shorter* and *Bistrian*, in which the Third Circuit relied on

---

[2] *See also Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022) (analyzing prisoner deliberate indifference claim under *Bivens*, *Davis*, and *Carlson*, without reference to *Farmer*).

*Farmer* as demonstrating a proper *Bivens* context, remain good law, and it is not clear that *Xi* or *Egbert* implicitly abrogated those cases. So we proceed to compare this case to *Farmer* to determine whether Plaintiff's claims come in a new context.

Judge Arbuckle found meaningful differences between Plaintiff's claims and *Farmer*. First, Judge Arbuckle noted Plaintiff is not a transgender prisoner who has been assaulted by a fellow inmate. (Doc. 42 at 26). Second, Judge Arbuckle noted Plaintiff is not complaining about being placed in general population instead of protective custody, unlike the *Farmer* plaintiff. (Doc. 42 at 26–27). Rather, Plaintiff is complaining about the decision to place him in the same cell as a known violent prisoner. Plaintiff calls these distinctions mere "slivers of daylight" between this case and *Farmer*, not "meaningful" differences. (Doc. 50 at 7). The court agrees.

The crux, or "context," of the plaintiffs' claims in *Farmer*, *Shorter*, and this case is a prisoner claiming there was a known, substantial risk that he or she would be assaulted by another prisoner, which prison officials were deliberately indifferent to in violation of the Eighth Amendment. Distinctions based on the prisoner's gender identity and the custodial status of the prisoner are "trivial." *See Abbasi*, 582 U.S. at 149; *see also Shorter*, 12 F.4th at 373 n.6 (noting the "remarkable" extent of factual overlap between *Farmer*

and *Shorter* is not required to conclude the case does not present a new *Bivens* context). Thus, the court will sustain Plaintiff's objection to the extent it cries error in Judge Arbuckle's determination that Plaintiff's failure to protect claim presents a new *Bivens* context. Should discovery reveal facts demonstrating "meaningful differences" between this claim and other *Bivens* contexts, Defendants are free to raise this argument again in a future motion.

Plaintiff's failure to intervene claim does not fair as well. This claim arises in a new *Bivens* context, to which Judge Arbuckle properly determined not to extend the *Bivens* remedy. Plaintiff alleges that Defendants stood by and watched pepper spray be used against Plaintiff despite their knowledge that medical staff should have been consulted and that Plaintiff was particularly vulnerable due to his asthma. (Doc. 1, ¶¶119–121). Judge Arbuckle correctly found this claim comes in a different context than *Bivens*, which involved FBI agents handcuffing a man in his home without a warrant and excessive force in violation of the Fourth Amendment. (*See* Doc. 42 at 45). Judge Arbuckle also correctly found this claim comes in a different context than *Carlson*. In *Carlson*, a prisoner brought an Eighth Amendment claim based on a failure to provide adequate medical care for his asthma. Here, as Judge Arbuckle correctly noted, this case in meaningfully different because Plaintiff is alleging Defendants knowingly failed to intervene when

excessive force was used against him. Thus, Plaintiff's objection to Judge Arbuckle's recommendation that the failure to intervene claim should be dismissed will be overruled.

Finally, since the court finds Plaintiff's failure to protect claim does not present a new *Bivens* context, we must address Defendant's argument that the claim should nonetheless be dismissed because Plaintiff failed to exhaust administrative remedies, which Judge Arbuckle did not reach. Plaintiff alleged in his complaint that he exhausted administrate remedies; but he backtracked in his opposition to the motion to dismiss, arguing he "could not exhaust his *Bivens* claims because such efforts were thwarted by BOP Staff." Plaintiff asks in the alternative to be given leave to amend his complaint to include these allegations. (*See* Doc. 24 at 9–10).

Under the Prison Litigation Reform Act (PLRA), a prisoner must pursue all avenues of relief available within a prison's grievance system before bringing a federal civil rights action concerning prison conditions. 42 U.S.C. §1997(e)(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000).

> The broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the prisoner will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000) (finding administrative remedies "unavailable" when correctional officers told prisoner that his grievances would not reach the Grievance Coordinator).

*Holton v. Finley*, No. 4:21-CV-737, 2021 WL 7186197, at *10 (M.D. Pa. Dec. 30, 2021), *report and recommendation adopted*, No. 4:21-CV-737, 2022 WL 585148 (M.D. Pa. Feb. 25, 2022).

The court agrees with Plaintiff that he should have the opportunity to develop his theory that the BOP officials "thwarted" his attempt to exhaust administrative remedies through discovery. However, that theory is not pleaded in the complaint, which includes the inconsistent allegation that Plaintiff did exhaust administrative remedies. Thus, the best way forward is for the court to grant Defendants' motion to dismiss and dismiss Plaintiff's *Bivens* claims without prejudice and with leave to amend. It has not been shown that amendment in this regard would be futile.[3]

### B.   FTCA discretionary function exemption

Next, the United States' objection to Judge Arbuckle's report turns on the applicability of the discretionary function exemption (DFE) under the

---

[3] Defendants also moved to dismiss Plaintiff's claims against Mr. Carvajal and Mr. Maiorana because the complaint contains no allegations of their personal involvement in the alleged wrongs. (*See* Doc. 16). Plaintiff responded by agreeing Maiorana should be dismissed. Plaintiff did not dispute dismissal of Carvajal. (Doc. 24). The court's review of the complaint reveals there are no plausible claims alleged against Carvajal. Thus, the court will dismiss the claims against both Maiorana and Carvajal. Dismissal with regard to Carvajal will be without prejudice because it is not clear that amendment would be futile.

FTCA. As Judge Arbuckle helpfully explained, to determine whether the DFE applies to the official conduct at issue—here, the officers' use of force in repeatedly deploying pepper spray and pepper balls to diffuse the situation—the court conducts a two-step inquiry:

> First, we ask whether the challenged conduct involved an element of judgment or choice, which depends on whether there is a federal statute, regulation or policy [that] specifically prescribes a course of action for an employee to follow." If a course of action is specifically prescribed[,] then the DFE is inapplicable because "the employee has no rightful option but to adhere to the directive." If a course of action is not specifically prescribed, then the court proceeds to the second step.
>
> Second, if the act does involve judgment, we ask whether the judgment involved is the kind that the discretionary function exception was designed to shield." The DFE will only except those actions and decisions "based on considerations of public policy." The focus at this second prong is whether the employee's actions are "susceptible to policy analysis," but a court does not focus on the employee's "subjective intent in exercising the discretion . . . ."

(Doc. 45 at 6–7) (citations omitted).

Staying within the four corners of the complaint, which courts generally must do when deciding a motion to dismiss, Judge Arbuckle found Plaintiff's allegations regarding the prison staff's conduct bring the FTCA claim outside the ambit of the DFE. Specifically, Judge Arbuckle found that under either dueling policy proposed by the parties, the prison staff would not have had discretion to administer the second or third round of chemical munitions if,

as Plaintiff alleges, the emergency had ceased and the erstwhile combatants lay facedown in submission. Instead, the "on-point" policies proffered by the parties both deal with BOP's response to *emergencies*. (*See* Doc. 45 at 24–25) (citing BOP Program Statements 5566.06 & 5576.06). Judge Arbuckle decided at this stage the court cannot make a factual finding that there was an ongoing emergency permitting further discretionary use of chemical munitions.

Judge Arbuckle also rejected the United States' argument that the officers had discretion to deploy chemical munitions the second and third round because Plaintiff's complaint makes clear the prisoners in the cell had not submitted to hand restraints. Judge Arbuckle reasoned it is not clear from the complaint whether the officers had ordered the prisoners to submit to hand restraints.

The United States objects, arguing Judge Arbuckle erred in allowing Plaintiff's FTCA claim based on the prison officials' response to the emergency to proceed. The United States argues this claim also falls under the discretionary function exemption and should be dismissed. However, a review of the record reveals Judge Arbuckle correctly declined to dismiss Plaintiff's claims based on the discretionary function exception at this stage. The on-point policies allowing prison officials discretion to deploy chemical

munitions prescribe such discretion only in the context of responding to an emergency. Whether there was truly an emergency when the prison officials deployed the second and third round of chemical munitions is a factual question not appropriate for adjudication at the motion to dismiss stage.

Moreover, the United States' argument that the prison officials had discretion to deploy chemical munitions the second and third round because the prisoners had still not submitted to hand restraints proves too much. The United States specifically avers that "even if it were true that the BOP continued to deploy chemical munitions after hostilities between the inmates ceased—an allegation which the United States denies—the emergency nevertheless remained uncontained until Plaintiff and his cellmate finally submitted to hand restraints." But, as Judge Arbuckle points out, it is not clear at this stage whether the prisoners were ordered to submit to hand restraints.

Taken to its logical conclusion, the United States' reading of applicable policy would mean prison officials have discretion to indiscriminately deploy chemical munitions in responding to a prisoner fight, even after the fight cedes and the prisoners lay prone, so long as the prison officials unilaterally withhold orders to submit to restraints or refrain from actually restraining the prisoners. Such a reading of the applicable policies guiding prison official's

chemical munition deployment is untenable. The objection will thus be overruled and Judge Arbuckle's report (Doc. 45) adopted in its entirety.

### III. CONCLUSION

In light of the foregoing, the court will **SUSTAIN** Plaintiff's objection to Judge Arbuckle's report to the extent the report finds Plaintiff's failure to protect claim presents a new *Bivens* context. The court will **OVERRULE** the United States' objection. In turn, the court will **ADOPT IN PART** the first report (Doc. 42) and **ADOPT IN ITS ENTIRETY** the second report (Doc. 45). An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 20, 2023**
22-06-01