GMK:RDE:cer

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DWAYNE SCOTT,** | : | **4:22-CV-0006** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Arbuckle, M.J.)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **et al.,** | : | |
| **Defendants** | : | **(Electronically filed)** |

## BRIEF IN SUPPORT OF
## *BIVENS* DEFENDANTS' MOTION TO DISMISS

GERARD M. KARAM
United States Attorney

/s/Richard D. Euliss
RICHARD D. EULISS
Assistant U.S. Attorney
DC 999166
U.S. Attorney's Office for the
Middle District of Pennsylvania
228 Walnut Street, Ste. 220
Harrisburg, Pa. 17108-1754
Phone:  717-221-4462
Dated: December 1, 2023           Fax: 717-221-4493

## **TABLE OF CONTENTS**

Procedural History ...............................................................................................1

Factual Background ..............................................................................................2

Argument.............................................................................................................3

   I.  There is no *Bivens* remedy for failure to protect .............................................3

     A. Standard ...................................................................................................3

     B. Scott's failure to protect claim is meaningfully distinct from *Bivens*, Davis, and *Carlson* ...................................................................................5

     C. Special factors preclude the creation of a new *Bivens* remedy ................7

         i.  *Existing alternative remedial structures limit the power of the Judiciary to infer a new Bivens action* ............................................7

         ii.  *Congress – not the Judiciary – has the authority to create a separate cause of action* ...............................................................9

     D. *Bistrian* and *Shorter* do not require a different result ..............................10

         i.  Bistrian *and* Shorter *do not survive* Egbert....................................12

         ii.  *Even if* Bistrian *and* Shorter *remain intact in the wake of* Egbert, *Scott's claims present a different context* .....................................12

   II.    Defendants are entitled to qualified immunity ........................................15

   III.   Scott has failed to exhaust his claims ................................................... 17

Conclusion ........................................................................................................19

<u>**TABLE OF AUTHORITIES**</u>

Page(s)

Cases

*Beers-Capitol v. Whetzel*,
    256 F.3d 120 (3d Cir. 2011).......................................................................... 16, 17
*Bistrian v. Levi*,
    912 F.3d 79 (3d Cir. 2018)........................................................... 4, 10, 11, 13
*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971).................................................................................1, 3
*Brooks v. Hankins*,
    2022 WL 350726 (S.D. Miss. Jan. 14, 2022), *report and recommendation
    adopted by* 2022 WL 350188 (S.D. Miss. Feb. 4, 2022) ......................................6
*Bulger v. Hurwitz*,
    2022 WL 340594 (N.D.W.V. Jan. 12, 2022)...................................................6
*Carlson v. Green*,
    446 U.S. 14 (1980).......................................................................................4
*Davis v. Passman*,
    442 U.S. 228 (1979) .....................................................................................4
*Dongarra v. Smith*,
    27 F.4th 174 (3d Cir. 2022) ........................................................................11
*Egbert v. Boule*,
    142 S. Ct. 1793 (2022)................................................... 3, 4, 5, 7, 8, 9, 10, 12, 14
*Farmer v. Brennan*,
    511 U.S. 825 (1994)......................................................... 4, 11, 14, 15, 16
*Giordano v. United States*,
    2022 WL 2374663 (D.S.C. June 10, 2022), *report and recommendation declined
    on other grounds,* 2022 WL 2358472 (D.S.C. June 29, 2022).............................6
*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020)...................................................................................8
*Inmates of Suffolk County Jail v. Rouse*,
    129 F.3d 649 (1st Cir. 1997).........................................................................9
*Longworth v. Mansukhani*,
    2021 WL 4472902 (E.D.N.C. Sept. 29, 2021) ...................................................6

*Mammana v. Barben*,
856 F. App'x 411 (3d Cir. 2021) ............................................................ 10, 11
*Marquez v. United States*,
81 F.4th 1027 (9th Cir. 2023) ...................................................................5
*Mays v. Smith*,
70 F.4th 198 (4th Cir. 2023) ......................................................................5
*McMillen v. Bureau of Prisons*,
2021 WL 5763580 (S.D. Tex. Nov 19, 2021), *report and recommendation*
*adopted by* 2021 WL 5760436 (S.D. Tex. Dec. 3, 2021) ..........................6
*Pavey v. Conley*,
544 F.3d 739 (7th Cir. 2008) ...................................................................18
*Pearson v. Callahan*,
555 U.S. 223 (2009) ..................................................................................15
*Porter v. Nussle*,
534 U.S. 516 (2002) ....................................................................................9
*Shorter v. United States*,
12 F.4th 366 (2021) ......................................................................... 4, 11, 14
*Small v. Camden Cnty.*,
728 F.3d 265 (3d Cir. 2013) ....................................................................18
*Woodford v. Ngo*,
548 U.S. 81 (2006) ......................................................................................9
*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) ....................................... 4, 6, 7, 9, 10, 12, 14

Statutes

5 U.S.C. § 301 ..................................................................................................8
42 U.S.C. § 1997e(a) ....................................................................................17
42 U.S.C. §  1997e ..........................................................................................9

iii

Federal inmate Dwayne Scott brings a putative *Bivens* claim under the Eighth Amendment against Defendants Bodge and O'Kane (collectively, "*Bivens* Defendants"). Because it arises in a new context and special factors counsel hesitation, the Court should dismiss the sole claim against them. Alternatively, the Court should dismiss the *Bivens* claim because Scott failed to allege a constitutional violation, thus entitling the *Bivens* Defendants to qualified immunity.

## PROCEDURAL HISTORY

On January 3, 2022, Scott filed a Complaint pleading several putative *Bivens*[1] claims, all of which arose from an altercation that Scott had with his cellmate on January 3, 2020, while incarcerated at USP Canaan. Compl. ¶ 48. The *Bivens* Defendants[2] moved to dismiss or, alternatively, for entry of summary judgment on July 25, 2022. *See* Docs. 10 & 16. On March 17, 2023, Magistrate Judge Arbuckle issued a Report and Recommendation ("R&R") recommending that the Court dismiss all *Bivens* claims because they arose in new contexts and because special factors counseled against the creation of a new *Bivens* remedy. *See* Doc. 42.

The Court then issued a Memorandum opinion on July 20, 2023, which adopted the R&R only in part. *See* Doc. 55. While it agreed that several of the

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] At that stage in the litigation, there were eleven total *Bivens* Defendants. The claims against all but two have since been dismissed with prejudice.

1

*Bivens* claims in the original complaint were not actionable (and therefore dismissed the same with prejudice), the Court also concluded that the failure to protect *Bivens* claim arising under the Eighth Amendment did not present a new context.  The Court nevertheless dismissed that claim, though without prejudice and with leave to amend, because Plaintiff had failed to exhaust administrative remedies.   In a subsequent order dated October 5, 2023, the Court then rejected the argument that Bodge and O'Kane were qualifiedly immune.  *See* Doc. 63.

Plaintiff has since filed the Second Amended Complaint ("SAC") alleging the same failure to protect claim against Bodge and O'Kane.  *See* Doc. 55.  Bodge and O'Kane now move again for dismissal on the sole remaining *Bivens* claim.[3]

## **FACTUAL BACKGROUND**[4]

While detained at USP Canaan in December 2019, the BOP celled Scott with Jonathan Riley.  SAC ¶¶ 38-39.  Scott contends that Riley "had a well-known reputation and a lengthy history of infractions, which include instances of violent

---

[3] The instant motion revisits grounds for dismissal that the Court previously entertained in its July 20 and October 5 rulings.  Because there is a new operative pleading, however, Bodge and O'Kane must present these arguments again to preserve their ability to pursue an interlocutory appeal under the collateral order doctrine.  In doing so, they do not simply refer back to earlier briefing because Local Rule 7.8(a) prohibits incorporation by reference.

[4] This section summarizes the substance of Plaintiff's allegations, as the *Bivens* Defendants move to dismiss the SAC, which requires the Court to assume Plaintiff's allegations are true.  The *Bivens* Defendants, however, do not concede to the accuracy of any of Plaintiff's allegations.

2

attacks upon his cellmates and other individuals." *Id*. ¶ 40.  Scott alleges that Bodge made and maintained this cell pairing in retaliation for Scott having filed administrative grievances.  *Id*. ¶¶ 41-42.  More than a month after the BOP first celled them together, Scott and Riley became engaged in a physical altercation.  *Id*. ¶¶ 48-49.   As a result of these events, the Complaint alleges that Scott suffered "bumps and bruises" and was "treated for the use of the chemical sprays" stemming from the BOP's emergent response to the ongoing altercation.  *Id*. ¶ 88.

On these allegations, Scott purports to bring a failure to protect claim against Bodge and O'Kane arising under the Eighth Amendment stemming from the decision to cell Riley with Scott.  The Court should dismiss this putative *Bivens* claim because, among other reasons, it implicates a new context not previously recognized by the Supreme Court.

## ARGUMENT

## I.    THERE IS NO *BIVENS* REMEDY FOR FAILURE TO PROTECT

### A. Standard

Last year the Supreme Court issued a watershed decision in *Egbert v. Boule*, 142 S. Ct. 1793, 1800 (2022), holding that a court should not recognize a *Bivens* remedy "in all but the most unusual circumstances." That includes cases involving "almost parallel circumstances or a similar mechanism of injury" to the three *Bivens* claims previously recognized by the Court.  *Id.* at 1805 (referring to *Bivens*, 403 U.S.

at 396; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980)).  Significantly, the Court indicated that, if it were "called to decided *Bivens* today," it would "decline to discover any implied causes of action in the Constitution." *Id.* at 1809.

To determine whether a *Bivens* remedy should be recognized, courts ask two questions: first, whether the case presents "a new *Bivens* context" and, if so, whether there are "special factors indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Id.* at 1803 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017)).

Here, Scott's failure to protect claim arises in a new context, as many courts have concluded under similar circumstances.  While the Third Circuit previously recognized failure to protect claims in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018) and in *Shorter v. United States*, 12 F.4th 366 (2021) on the faulty premise that *Farmer v. Brennan*, 511 U.S. 825 (1994) is a fourth *Bivens* context previously recognized by the Supreme Court, Scott's claim is meaningfully different even from those cases.  And, besides, the Third Circuit's reasoning in *Bistrian* and *Shorter* is, and always has been, at odds with *Abbasi* and now has been unequivocally overtaken by *Egbert*, a point which the Third Circuit appears poised to address directly.[5]

---

[5] This Court's prior decision not to dismiss with prejudice the deliberate indifference

Because Scott's claim is meaningfully different from the only three *Bivens* contexts recognized by the Supreme Court, and because special factors warrant hesitation from allowing these claims to proceed, the Court should dismiss Count I.

### B. Scott's failure to protect claim is meaningfully distinct from *Bivens*, *Davis*, and *Carlson*

Scott seeks liability under the Eighth Amendment stemming from the decision to cell him with Riley. *Bivens*, on the other hand, involved an illegal search under the Fourth Amendment, while *Davis* concerned gender discrimination under the Fifth Amendment Due Process Clause. Neither *Davis* nor *Bivens* bears on Scott's allegations; about that there can be little debate. Instead, of the three *Bivens* contexts to survive *Abbasi*, *Carlson* is the most closely analogous, at least insofar as it involves a BOP inmate seeking personal liability under the Eighth Amendment for injuries sustained while incarcerated. Unfortunately for Scott, that is where the similarities between his case and *Carlson* end.

---

claim rested largely on the Third Circuit's ruling in *Bistrian* that *Farmer* is a fourth established *Bivens* context. In a presently pending appeal involving analogous circumstances, however, the Third Circuit recently appointed pro bono counsel for Plaintiff and directed the parties "to address **whether a Bivens remedy exists as to [Plaintiff's] Eighth Amendment failure-to-protect claims in light of [Farmer] and Egbert v. Boule, 142 S. Ct. 1793 (2022)**." *See Rinaldi v. United States, et al.*, Case No. 21-2298, Doc. 26 (3d Cir.) (emphasis added). The Appellant's brief is due on December 18, 2023. *See id.* at Doc. 34-1. *Bistrian* reliance on *Farmer* has been roundly criticized by other circuit courts, especially in the wake of *Egbert*. *See Mays v. Smith*, 70 F.4th 198, 203-04 (4th Cir. 2023); *Marquez v. United States*, 81 F.4th 1027, n.2 (9th Cir. 2023).

5

The injuries in *Carlson* stemmed from an alleged failure of BOP personnel to provide adequate medical care, whereas Scott alleges injury from a failure to protect him from another inmate.  The "mechanism of injury," thus, is different.  *Abbasi*, 137 S. Ct. at 1859.  While Scott coincidentally also suffers from asthma, his failure to protect claim has nothing to do with a failure to treat that condition.

Even before the Supreme Court further clarified in *Egbert* the extent to which courts now must curtail *Bivens* expansion, several courts had already concluded that run-of-the-mill failure to protect claims implicate a new context under *Abbasi* and that special factors precluded expansion of *Bivens*.  *See, e.g., Brooks v. Hankins*, 2022 WL 350726, at *3 (S.D. Miss. Jan. 14, 2022) (*report and recommendation adopted by* 2022 WL 350188 (S.D. Miss. Feb. 4, 2022)); *Bulger v. Hurwitz*, 2022 WL 340594, at *3 (N.D.W.V. Jan. 12, 2022); *Giordano v. United States*, 2022 WL 2374663, at *5 (D.S.C. June 10, 2022) (two days post-*Egbert*) (*report and recommendation declined on other grounds*, 2022 WL 2358472 (D.S.C. June 29, 2022)); *Longworth v. Mansukhani*, 2021 WL 4472902, at *5 (E.D.N.C. Sept. 29, 2021); *McMillen v. Bureau of Prisons*, 2021 WL 5763580, at *3 (S.D. Tex. Nov 19, 2021) (*report and recommendation adopted by* 2021 WL 5760436 (S.D. Tex. Dec. 3, 2021)).

Just like these courts held, Scott's failure to protect claim is meaningfully different from all three recognized *Bivens* contexts.  The Court, therefore, must

6

consider whether special factors caution against the creation of a new *Bivens* claim. Here, indeed, they do.

### C. Special Factors Preclude the Creation of a New *Bivens* Remedy

When considering a putative *Bivens* claim, "[a] court faces only one question: whether there is *any* reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805 (internal quotations omitted) (emphasis in original).   Here, there are numerous special factors, any one of which offers sufficient basis to refrain from extending *Bivens*.

> i.   *Existing alternative remedial structures limit the power of the Judiciary to infer a new* Bivens *action*

The BOP's administrative remedy process, in and of itself, forecloses *Bivens* relief.   Even where a court identifies similarities with a previous *Bivens* case, *Egbert* stresses that "a court ***may not*** fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'"142 S. Ct. at 1804 (quoting *Abbasi*, 137 S. Ct. at 1858) (emphasis added). In declining a *Bivens* claim, the Court in *Egbert* held that "Congress has provided alternative remedies for aggrieved parties in Boule's position that independently foreclose a *Bivens* action." *Id.* at 1806.   Referencing with approval the BOP's administrative remedy program, the Court concluded that the U.S. Border Patrol's

similar administrative process foreclosed judicial creation of a damages remedy, despite that case's similarity with *Bivens*.  *Egbert*, 142 S. Ct. at 1806-07.

There are additional alternative processes that create even further deterrent effect, such as internal BOP discipline and DOJ Office of Inspector General oversight.  *See Egbert*, 142 S. Ct. at 1806 (discussing executive branch investigation and intra-agency oversight of employees as special factors); *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020) (discussing DOJ's prosecution determination).  The Attorney General is obligated to "[s]upervise and direct the administration and operation of the Department of Justice," which includes the Bureau of Prisons.  28 C.F.R. § .05(a); 28 C.F.R. § .1; *see* 5 U.S.C. § 301 (authorizing the head of an Executive department to "prescribe regulations for . . . the conduct of its employees"); *see also* U.S. Department of Justice, Federal Bureau of Prisons, Program Statement 1210.24 Internal Affairs, Office of (establishing an Office of Internal Affairs to receive and investigate allegations of staff misconduct).[6]

The grievance and investigation procedures described above are, as *Egbert* underscores, reason alone to hesitate before recognizing a *Bivens* remedy.  That remains true irrespective of whether a particular plaintiff ever files a grievance, or

---

[6] Available at https://www.bop.gov/policy/progstat/1210_024.pdf (last visited July 21, 2022).

whether the BOP investigates a particular incident.  Indeed, even an allegedly "inadequate" grievance process can "independent[ly]" foreclose *Bivens* relief from a federal law enforcement officer.  *Egbert*, 142 S. Ct. at 1806.   That is because the relevant "focus is whether the Government *has put in place* safeguards to prevent constitutional violations from recurring," not whether the reviewing Court deems those adequate.  *Id.* at 1807 (quotations omitted) (emphasis added).  Here, as in *Egbert*, such safeguards plainly exist.  *See id.* at 1807.

ii.    *Congress – not the Judiciary – has the authority to create a separate cause of action*

Separation of powers is another special factor this Court must consider, which the Supreme Court deems "central" to any *Bivens* analysis.  *Abbasi*, 137 S. Ct. at 1848; *see also Egbert*, 142 S. Ct. at 1803 (the central question is "whether there is any reason to think that Congress might be better equipped to create a damages remedy").  To that end, approximately 15 years after the Supreme Court implied a *Bivens* remedy of inmates alleging deprivation of medical care in *Carlson*, Congress passed the Prison Litigation Reform Act of 1995, *see* 42 U.S.C. § 1997e, to "reduce the quantity and improve the quality of prisoner suits."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Congress designed the PLRA's provisions to "bring . . . under control" the "sharp rise in prisoner litigation in the federal courts," *Woodford v. Ngo*, 548 U.S. 81, 84 (2006), and to "oust the federal judiciary from day-to-day prison management," *Inmates of Suffolk County Jail v. Rouse*, 129 F.3d 649, 655 (1st Cir.

1997).  What the PLRA notably does *not* "provide [is] a standalone damages remedy against federal jailers." *Abbasi*, 137 S. Ct. at 1865.

Congress' silence must control.  *Egbert* makes plain that courts must "defer to congressional inaction if the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms." 142 S.Ct. at 1808 (internal quotations omitted).  "At bottom, creating a cause of action is a legislative endeavor . . . [a]nd the Judiciary's authority to do so at all is, at best, uncertain." *Id*. at 1803.  Creation of a new *Bivens* remedy here would be incongruous with Congress's unequivocal legislative goal of *limiting* litigation emanating from federal prisons.[7]

*          *          *

In *Abbasi* and *Ebgert*, the Supreme Court has made clear that courts must refrain from creating new *Bivens* actions and leave to Congress the policy choices of whether to create remedies.

### D. *Bistrian* and *Shorter* Do Not Require a Different Result

In the aftermath of *Abbasi*, but before *Egbert*, the Third Circuit has had

---

[7] While it had previously discounted Congress' silence in the PLRA, *see Bistrian, 912 F.3d at 93*, more recent Third Circuit precedent considered the PLRA a special factor especially where, as here, "the prisoner mistreatment alleged is different and quite more general than that alleged in *Carlson*." *Mammana, 856 F. App'x at 415*. Moreover, *Bistrian*'s discounting of the PLRA's silence is incompatible with the Supreme Court's reliance on legislative inaction in *Egbert*.  142 S. Ct. at 1808.

10

multiple occasions to consider whether particular Eighth Amendment claims are actionable.  The court concluded, for example, that no Eighth Amendment *Bivens* claims exist for challenging conditions of confinement or housing assignments.  *See Mammana v. Barben*, 856 F. App'x 411 (3d Cir. 2021) (conditions of confinement); and *Bistrian*, 912 F. 3d at 94-95 (housing).  When it comes to Eighth Amendment failure to protect claims, however, the court has both recognized and declined to recognize such claims, depending on the case's particular circumstances.  *Compare Bistrian*, 912 F.3d at 94 and *Shorter v. United States*, 12 F.4th 366, 372 (M.D. Pa. 2021) *with Dongarra v. Smith*, 27 F.4th 174, 181 (3d Cir. 2022).

The Third Circuit's narrow rulings in *Bistrian* and *Shorter* upholding those failure to protect claims do not salvage Scott's claim.  Both *Bistrian* and *Shorter* relied upon the Supreme Court's 1994 ruling in *Farmer v. Brennan*, 511 U.S. 825 (1994) to hold that there is a fourth established *Bivens* context under Supreme Court jurisprudence for failure to protect under the Eighth Amendment.  However, the Supreme Court's much more recent holding in *Egbert* has undermined the Third Circuit's reasoning in *Bistrian* and *Shorter*.[8]

---

[8] Indeed, *Bistrian*'s reliance on *Farmer* has since come under attack from subsequent Third Circuit authority.  *See Mammana*, 856 F. App'x 411, n. 5.

i.   *Bistrian and* Shorter *do not survive* Egbert

*Egbert*'s ruling overtakes the Third Circuit's analysis underpinning its decision to extend *Bivens* to failure to protect claims.  First, *Bistrian* and *Shorter*'s treatment of *Farmer* as a recognized *Bivens* context flies in the face of the unequivocal dictate in *Abbasi* – reiterated and confirmed in *Egbert* – that it is only *Bivens*, *Davis*, and *Carlson* to which a court should compare a given case for the "new context" analysis.  *Abbasi*, 137 S.Ct. at 1855 ("These three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the Court has approved an implied damages remedy under the constitution itself"); *Egbert*, 142 S. Ct. at 1803 ("we ask whether the case presents a new *Bivens* context – *i.e.*, is it meaningful[ly] different from the *three* cases in which the Court has implied a damages action") (emphasis added) (internal quotes omitted).  Because *Egbert* reiterates that *Farmer* is not among the trilogy of cases in which the Supreme Court formally found a *Bivens* remedy, it necessarily follows that the *Farmer* context is "new." [9]

ii.   *Even if* Bistrian *and* Shorter *remain intact in the wake of* Egbert*, Scott's claims present a different context*

But even if the Court were to conclude that *Egbert* left *Bistrian* and *Shorter* intact, Scott's claim still presents a new context that is distinguishable from those

---

[9] As indicated in footnote 5, supra, in a case presenting analogous facts, the Third Circuit recently requested the parties to address specifically whether an Eighth Amendment failure to protect claim exists under *Farmer* in light of *Egbert*.

cases.  In *Bistrian*, BOP officials placed plaintiff in the SHU four times over a three-year period, with one stint lasting nearly a year.  912 F.3d at 83-84.  During that lengthier stay in the SHU, BOP staff actively recruited plaintiff to participate in a perilous surveillance scheme to intercept written correspondence between prisoners. 912 F.3d at 84.  Plaintiff's fellow prisoners discovered his cooperation due to the alleged negligence of those same BOP officials, leading to multiple outward threats to plaintiff.  *Id*.  Despite their erstwhile alliance with plaintiff – and allegedly aware of the threats made – BOP personnel placed plaintiff in a recreation yard and then failed to intervene immediately upon observing a group of inmates beating him.  *Id*. Scott's allegations are meaningfully distinct from *Bistrian*.

First, unlike *Bistrian*, Scott does not allege that Defendants affirmatively recruited or manipulated him into participating in an inherently hazardous surveillance operation – a scheme which objectively would place him in peril. Second, because the defendants in *Bistrian* actively placed the plaintiff in those circumstances, it would also follow that they had actual knowledge of the inherent danger that would befall plaintiff should other inmates gain physical access to him. None of those factors are present in Scott's allegations.

*Shorter* and *Farmer* are also distinguishable from Scott's context.  In both cases, transgender female inmates housed in the general population of all-male prisons sued BOP officials for deliberate indifference after other inmates assaulted

and raped them. *Shorter*, 12 F.4th at 371; *Farmer*, 511 U.S. at 829-31. The plaintiff in *Shorter* "presented as transgender, was small in stature, and had been sexually assaulted at another prison facility[,]" *Shorter,* F. 4th at 369, while the plaintiff in Farmer "project[ed] feminine characteristics." 511 U.S. at 831. *Shorter* and *Farmer*, therefore, presented a highly specific set of facts that have no bearing on this case. Here, Scott displayed no outward, objectively vulnerable attributes that would place him in heightened danger, and Scott was not sexually assaulted.

Yet, even if the Court discerns *some* similarity between Scott's claim and *Farmer*, *Bistrian* or *Shorter*, still it must conclude that the context is different, as "a modest extension is still an extension." *Abbasi*, 137 S. Ct. at 1964. *Egbert* – a case involving allegations of excessive force under the Fourth Amendment by a law enforcement agent – is an edifying demonstration of how literal the Supreme Court means that language. There the Court conceded that *Egbert*'s facts presented "almost parallel circumstances" with *Bivens*, 142 S. Ct. at 1805, but nevertheless disregarded that similarity as "superficial" given that "the Judiciary is not undoubtedly better positioned than Congress" to create a cause of action. *Id*. The Court elaborated that "a plaintiff cannot justify a *Bivens* extension based on parallel circumstances with *Bivens*, [*Davis*], or *Carlson* unless he also satisfies the analytic framework prescribed by the last four decades of intervening case law." *Id*. at 1809. The Court, therefore, should decline to recognize Scott's proposed *Bivens* claim

14

alleging a failure to protect despite the superficial similarity between his allegations and those in *Bistrian*, *Farmer*, and *Shorter*.

## II.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citation omitted). Courts address two questions: first, whether the facts alleged show that the defendant's conduct violated a constitutional right, and second, whether that right was "clearly established" at the time of the events alleged. *Id.* at 235-36.  Here, because Scott has failed to allege any constitutional violation, Bodge and O'Kane are qualifiedly immune.

Specifically, Scott has failed to allege a for failure to protect.  Under the Eighth Amendment, prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 828 (internal citations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  A prison official cannot be found liable under the Eighth Amendment for disregarding an excessive risk to inmate health or safety unless the official was both aware of the facts from which an inference could be drawn that a

substantial risk of serious harm existed and he actually drew the inference.  *Id*. at 837; *See also Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2011).

Here, Scott has not alleged that Defendants Bodge or O'Kane had the requisite knowledge to have violated the Eighth Amendment.  First, while he alleges in conclusory fashion that "Mr. Riley had a well-known reputation" as a violent inmate, SAC ¶40, he offers no supporting allegations that would plausibly demonstrate that to be the case.  For example, Scott does not describe any prior incidents or behavioral infractions involving Riley that would make him an especially dangerous inmate when compared to the average inmate in a federal prison, nor does he allege that either Bodge or O'Kane actually drew the inference that Riley would pose an unreasonable danger.

While true that Scott alleges that Riley told him that Bodge housed them together "specifically because Mr. Scott filed too many administrative grievances," SAC ¶42, nowhere does he allege that Bodge herself represented that her motivation for celling Riley with Scott was to retaliate against Scott's filing of administrative remedies.  Nor does he offer any other allegations to corroborate Riley's supposed representations.

Scott alleges even less regarding O'Kane, contending only that Scott "petitioned Lt. O'Kane and asked him if the administration would consider relocating him to a cell with a less dangerous individual."  *Id*. ¶43.  But even that

allegation, taken as true, does not plausibly demonstrate either that O'Kane was aware that Riley was violent or that O'Kane had the requisite knowledge of the ostensible risk that Riley posed to Scott.  Moreover, Scott makes no allegations concerning a retaliatory motive as to O'Kane.

Finally, while Scott alleges solely in conclusory fashion that both Bodge and O'Kane "knew or should have known" that Riley posed an unsafe risk, *id*. ¶¶ 97, 99; "[t]he knowledge element of deliberate indifference is subjective, not objective knowledge, meaning the official must actually be aware of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol*, 256 F.3d at 133.

Both Bodge and O'Kane are entitled to qualified immunity, as an official does not violate a clearly established right when he or she does not violate the Constitution in the first place, and Plaintiff has failed to plausibly allege an Eighth Amendment violation.  The *Bivens* Defendants, therefore, are entitled to qualified immunity.

## III.   SCOTT HAS FAILED TO EXHAUST HIS CLAIMS

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Plaintiff concedes that he did not exhaust administrative remedies for his failure to protect claim.  *See*

Doc. 24 at 9-10.  In the SAC, Plaintiff alleges that he submitted a BP-9, but that BOP staff did not properly log the same and that, therefore, BOP staff "stymied" his ability to exhaust.  *See* Doc. 71 at ¶¶ 94-95.  The Court concluded in its prior ruling that Plaintiff should "have the opportunity to develop his theory that the BOP officials 'thwarted' his attempt to exhaust through discovery."  Doc. 55 at 10.

Although the Court has the authority to make findings of fact at this stage of the proceedings as to exhaustion, *see Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013)*,* the *Bivens* Defendants do not ask the Court to revisit whether Plaintiff first should be afforded an opportunity to engage in discovery to develop his "thwarting" theory.  The *Bivens* Defendants, however, do suggest that – to the extent the *Bivens* claim survives the present motion – the Court initially confine such discovery to the matter of exhaustion before proceeding to the merits.  *See Small*, 728 F.3d at 271, n. 5 (3d Cir. 2013) ("We emphasize that in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved.  If merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved") (quoting *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)).

18

## <u>CONCLUSION</u>

For all the reasons stated above, the Court should dismiss the sole remaining

*Bivens* claim with prejudice.

Respectfully submitted,

GERARD M. KARAM
United States Attorney

<u>/s/Richard D. Euliss</u>
RICHARD D. EULISS
Assistant U.S. Attorney
DC 999166
CYNTHIA E. ROMAN
Supv. Paralegal Specialist
240 West Third Street, Suite 316
Williamsport, PA 17701
Phone:  717-221-4462
Dated: December 1, 2023                    Fax: 717-221-4493

19

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DWAYNE SCOTT,** | : | **4:22-CV-0006** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Arbuckle, M.J.)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **et al.,** | : | |
| **Defendants** | : | **(Electronically filed)** |

<u>**CERTIFICATE OF SERVICE BY MAIL**</u>

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  That on August 8, 2022, she served a copy of the attached

<u>**BRIEF IN SUPPORT**</u>
<u>**OF MOTION TO DISMISS**</u>

by electronic service pursuant to Local Rule 5.7 and Standing Order 04-6, ¶ 12.2 to the following individual(s):

Addressees:

Christopher Lynett
Clynett@KechesLaw.com

<u>Cynthia E. Roman</u>
Cynthia E. Roman
Supv. Paralegal Specialist
